# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> -vs- ) <br> ) <br> JILL NICOLE FORD, ) <br> ) <br> ) <br> ) <br> ) <br> Defendant. ) | No. _____CR-22-9-JD_____ <br><br> Violations: 18 U.S.C. § 1344(2) <br> 18 U.S.C. § 1957(a) <br> 18 U.S.C. § 982(a)(1) <br> 18 U.S.C. § 982(a)(2) <br> 28 U.S.C. § 2461 |

## INFORMATION

The United States Attorney charges:

### Introduction

At all times relevant to this Information:

1. **JILL NICOLE FORD ("FORD")**, the defendant, was a resident of the Western District of Oklahoma.

2. Oliver and Olivia Apparel, Inc., ("O & O") was an Internet clothing retailer located in the Western District of Oklahoma that was owned by **FORD**.

3. Citizens Bank of Edmond ("Citizens Bank") was a financial institution in the Western District of Oklahoma, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC").

4. MidFirst Bank was a financial institution in the Western District of Oklahoma, the deposits of which were insured by the FDIC.

5. On or about March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), that provided more than $2 trillion in relief for individuals and businesses adversely affected by the coronavirus pandemic. Pursuant to the CARES Act, the Secretary of the Treasury and the Federal Reserve Board created the Main Street Lending Program (MSLP) to promote lending to small- and medium-sized businesses affected by the coronavirus pandemic. As part of the MSLP, the Secretary of the Treasury and the Federal Reserve Board created a government-owned facility to purchase 95 percent participations in loans made by private lenders that conformed to the MSLP's terms while the lenders retained five percent of each loan they originated.

6. In or about August 2020, **FORD**, on behalf of O & O, submitted an application to Citizens Bank for a $424,168 loan pursuant to the MSLP.

7. On or about September 11, 2020, **FORD**, on behalf of O & O, executed a loan agreement with Citizens Bank in which she agreed that: (a) O & O would use the proceeds of the MSLP loan for working capital and payroll only; and (b) no distributions would be made to any owner of O & O from the loan proceeds. Citizens Bank executed a participation agreement with MSLP on or about September 11, 2020.

8. On or about September 28, 2020, O & O received loan proceeds in the amount of $405,686.84 in its bank account (Account No. XXX3394) at Citizens Bank (the "MSLP Account"). The balance of the MSLP Account prior to the deposit was $100.09.

## COUNT 1
### (Bank Fraud)

9. The United States Attorney incorporates paragraphs 1-8 by reference.

### The Scheme to Defraud

10. It was part of the scheme that on or about September 11, 2020, **FORD** signed a loan agreement with Citizens Bank falsely representing that she would use MSLP funds for working capital and payroll only, and that she would not make distributions to herself as the owner of O & O.

11. It was part of the scheme that on or about September 29, 2020, **FORD** deposited a $5,000 cashiers checks drawn on the MSLP Account into an O & O account at MidFirst Bank.

12. It was part of the scheme that on or about September 29, 2020, **FORD** withdrew $5,000 in cash from the MSLP Account and deposited it into an O & O account at MidFirst Bank.

13. It was part of the scheme that on or about September 30, 2020, **FORD** wired $35,000.00 from the MSLP Account to an O & O account at MidFirst Bank. Thereafter, also on or about September 30, 2020, **FORD** made two transfers in a total amount of $40,500.00 from the O & O account at MidFirst Bank, to her personal MidFirst Bank account. **FORD** used these funds to make a payment for the construction of her personal home.

14. It was also part of the scheme that on or about October 23, 2020, **FORD** wired $73,000.00 from the MSLP Account to an O & O account at MidFirst Bank. The same day, **FORD** transferred $74,000.00 from O & O's MidFirst Bank account to her personal MidFirst Bank account. **FORD** used those funds to pay for the construction of her personal home.

15. It was also part of the scheme that on or about November 5, 2020, **FORD** transferred $10,000.00 from the MSLP Account to her personal account at Citizens Bank. The same day, **FORD** wrote a $10,000.00 check from her personal account at Citizens Bank as a down payment on a Cadillac Escalade ESV for her personal use.

## Execution of the Scheme

16. From on or about September 11, 2020, through on or about November 5, 2020, in the Western District of Oklahoma,

--------------------------------------**JILL NICOLE FORD**--------------------------------------

with the intent to defraud, willfully and knowingly executed and attempted to execute a scheme and artifice to defraud Citizens Bank and to obtain monies and funds owned by, and under the custody and control of, Citizens Bank by means of materially false and fraudulent pretenses, representations, and promises by making false representations in a loan agreement and converting proceeds of an MSLP loan she obtained on behalf of O & O to her personal use.

All in violation of Title 18, United States Code, Section 1344(2).

## COUNT 2
### (Money Laundering)

17. The United States Attorney incorporates paragraphs 1-16 by reference.

18. On or about October 23, 2020, in the Western District of Oklahoma,

--------------------------------------JILL NICOLE FORD--------------------------------------

knowingly engaged in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000.00. In particular, **FORD** wrote a check drawn on her personal bank account at MidFirst Bank in the amount of $73,632.58 to pay for the construction of her personal home, after those funds had been derived from bank fraud, a specified unlawful activity pursuant to Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1).

All in violation of Title 18, United States Code, Section 1957(a).

## FORFEITURE ALLEGATIONS

The allegations contained in this Information are hereby realleged and incorporated for the purpose of alleging forfeiture.

Upon conviction of the offense alleged in Count 1 of this Information, **JILL NICOLE FORD** shall forfeit to the United States any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offense.

Likewise, upon conviction of the offense alleged in Count 2 of this Information, **JILL NICOLE FORD** shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

The property to be forfeited includes, but is not limited to, a money judgment in the amount of $252,143.35, which represents the proceeds obtained as a result of the offenses.

Pursuant to Title 21, United States Code, Section 853(p), as adopted by Title 28, United Stated Code, Section 2461(c), **JILL NICOLE FORD** shall forfeit substitute property, up to the value of the property described above if, by any act or omission of defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property that cannot be subdivided without difficulty.

All pursuant to Title 18, United States Code, Sections 982(a)(1) and (a)(2), and Title 28, United States Code, Section 2461.

ROBERT J. TROESTER
United States Attorney

*/s/ Jessica L. Perry*

JESSICA L. PERRY
Assistant United States Attorney